**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re JAMES BERRY CRADDOCK, d/b/a
Craddock Development Company,

    Debtor,

----------------------

            No. 95-1437

UNITED STATES OF AMERICA,
INTERNAL REVENUE SERVICE,

    Claimant-Appellant,

v.

JAMES BERRY CRADDOCK,

    Debtor-Appellee.

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 94-K-175)**

---

Laurie Snyder (Henry Lawrence Solano, United States Attorney, and Gary D.
Gray with her on the briefs), Department of Justice, Washington, D.C., for
Claimant-Appellant.

John Lawrence Hamil (Richard C. Morris with him on the brief) of Hamil
Professional Corporation, Denver, Colorado, for Debtor-Appellee.

---

Before **BRORBY,** Circuit Judge, **McKAY**, Senior Circuit Judge, and **HENRY**,
Circuit Judge.

**BRORBY**, Circuit Judge.

_____

Mr. James Berry Craddock petitions this court for rehearing on the issue of his substantial understatement of tax penalty addressed in our opinion, *In re Craddock*, 143 F.3d 595, 1998 WL 213685 (10th Cir. May 1, 1998). We grant Mr. Craddock's petition, in part, as to our standard of deference applicable to a treasury regulation, and the application of this standard to Treas. Reg. § 1.6661-2(c)-(d). We deny his petition as to all other issues and deny his suggestion for rehearing *en banc*. The original opinion is withdrawn. This opinion is ordered substituted for the original opinion filed in this case.

The Internal Revenue Service ("IRS") appeals the district court's denial of late filing penalties and computation of a substantial underpayment of tax penalty assessed against Mr. James Berry Craddock's Chapter 11 bankruptcy estate. The IRS contends the district court erred in reversing the bankruptcy court's finding that no reasonable cause existed for Mr. Craddock's failure to timely file his federal 1981, 1982, and 1985 tax returns, and affirming the bankruptcy court's computation of understatement of tax penalty for Mr. Craddock's 1985 tax liability. We exercise jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291, and reverse.

**BACKGROUND**

The IRS filed proofs of claims for taxes, interest and penalties against Mr. Craddock's bankruptcy estate relating to tax years 1979-1986.[1] Most the claims were resolved by agreement except for the two issues in this appeal. The relevant facts are as follows.

*Failure to timely file tax returns.*

During the years 1981-1985, Mr. Craddock owned and operated a real estate development company, Craddock Development Company ("CDC"), as a sole proprietor. He reported his CDC income in his federal individual income tax returns for each of the relevant tax years. Despite obtaining extensions, Mr. Craddock filed each of his income tax returns for the years 1981, 1982, and 1985 over ten months late. Consequently, the IRS assessed late filing penalties under I.R.C. § 6651.[2] Mr. Craddock objected on grounds his failure to timely file the returns was due to reasonable cause and not willful neglect, an excuse permitted

---

[1] The penalties included additions to tax for negligence under 26 U.S.C. ("I.R.C.") § 6653(a) and failure to file timely tax returns under I.R.C. § 6651(a) for each of the tax years 1981-1985, and substantial understatement of tax penalties pursuant to I.R.C.§ 6661 for tax years 1982, 1983, and 1985.

[2] The late-filing penalties disputed in this appeal are $82,540 for 1981, $1,665 for 1982, and $61,806 for 1985.

by I.R.C. § 6651(a). In support of his objection, Mr. Craddock presented his testimony and testimony of Mr. Robert J. Rudnick, a former CDC accountant responsible for reviewing Mr. Craddock's tax returns from July 1982 through 1985. Their testimony provided the following evidence.

Mr. Craddock delegated his tax return preparation duties to CDC's accounting staff. During the years in question, CDC and its related businesses experienced exponential growth and complexity, resulting in the addition of at least twenty-five other businesses arranged as pass-through entities such as partnerships and S-corporations. To handle the additional workload, Mr. Craddock added another accounting department and increased his accounting personnel from five in the early 1980's to fifty by 1985. Mr. Craddock hired outside accounting firms to review the tax returns prepared by his accounting staff. From 1981 through 1985, Mr. Craddock paid approximately $1 million per year (about fifty percent of his total payroll) on accounting and tax staff, and more than $100,000 per year in fees to his independent certified public accounting firm.

Mr. Craddock also purchased a new accounting system, the Basic-4 system, to help manage his growing business. However the Basic-4 system failed to

perform as quickly and effectively as represented. Despite his efforts, Mr. Craddock knew his tax returns were still not being timely filed. Yet, he did not instruct his staff to timely file the returns since he wanted the returns to be accurate. He also chose not to hire outside accounting firms to help prepare tax returns because he felt "[t]hey were too expensive."

Mr. Rudnick testified the untimely filing of Mr. Craddock's tax returns was also due to a high rate of personnel turnover, extensive audits of prior years' tax returns which required substantial amounts of the accounting department's time, and the conversion to CDC's accounts from the accrual to the cash basis.

The bankruptcy court allowed the IRS's late filing penalties for several reasons. The court cited *United States v. Boyle*, 469 U.S. 241 (1985) in concluding Mr. Craddock's reliance on his accounting staff for the ministerial task of filing tax returns was not "reasonable cause." In addition, the court held the growth and complexity of one's business does not constitute an excuse. Furthermore, the court ruled Mr. Craddock was liable for the penalties because it found "the circumstances were clearly within Mr. Craddock's ability to control."

The district court reversed, ruling the bankruptcy court improperly applied

*Boyle* to the facts of this case since Mr. Craddock did more than merely rely on his accounting department. The court held the proper legal standard was whether Mr. Craddock exercised ordinary business care and prudence in attempting to file his returns on time. The court concluded Mr. Craddock exercised such care, and overruled the bankruptcy court's finding the circumstances were within Mr. Craddock's ability to control. The IRS appeals the district court's decision.

*Substantial Understatement of Tax*

The IRS assessed a $61,825 understatement of tax penalty under I.R.C. § 6661(a) (1985),[3] as an addition to Mr. Craddock's 1985 tax liability. Under the 1985 version of I.R.C. § 6661, an understatement of tax is the difference between the amount of tax *required* to be reported on a return, and the amount of tax *actually reported*, reduced by the amount of tax attributable to any item disclosed, but not reported in the tax return. I.R.C. § 6661(b)(2)(A), (B). Mr. Craddock's corrected tax required to be reported in his 1985 tax return was $247,299 after IRS audit adjustments. He reported no tax. He disclosed but did not report income of $3,378,385 from the "Airport Raintree" transaction. Following Treas.

---

[3] I.R.C. § 6661(a) (repealed and material portions recodified in 1989 in § 6662) imposed a twenty-five percent penalty on a substantial underpayment of tax attributable to an understatement of tax.

Reg. § 1.6661-2(c) and (d), the IRS computed Mr. Craddock's substantial understatement penalty by recomputing his tax shown on his return as if he had properly reported the Airport Raintree transaction for tax purposes, resulting in a revised tax shown on his return of $0, and a substantial understatement of tax of $247,299.

Mr. Craddock objected to the penalty on the ground that under the statute's plain language, if the understatement was reduced "by that portion of the understatement which is attributable to ... any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed," he would not be liable for a penalty. I.R.C. § 6661(b)(2)(B). The bankruptcy court agreed, rejecting the IRS's calculation in accordance with Treas. Reg. § 1.6661-(c) and ruling there was no understatement of tax within the meaning of I.R.C. § 6661. It found no understatement would exist if the income attributable to the Airport Raintree transaction was excluded from the computation of his corrected tax required to be shown on his return. The district court affirmed by deciding the bankruptcy court's computation was consistent with the purposes of I.R.C. § 6661(b)(2)(B)(ii) "to deter the use of undisclosed questionable reporting decisions" since it "reversed out" the effect of the disclosed Airport Raintree transaction. The IRS appeals.

The IRS also filed a motion in this court in July 1997 for leave to file a motion in the bankruptcy court to correct a mistake in the bankruptcy court's judgment filed January 7, 1994, almost three years ago. The IRS contends the judgment did not accurately reflect the amount of interest contained in the parties' stipulation filed March 9, 1993. The bankruptcy court's 1994 judgment awarded taxes, penalties and interest specified in the IRS's Corrected Calculations filed with the court on November 3, 1993. The IRS filed its Corrected Calculations pursuant to the court's request that it calculate negligence penalties, not Mr. Craddock's total tax liability including all penalties and interest. The IRS's Corrected Calculations and hence the judgment appears not to have included the amount of interest stipulated by the parties.

Under Fed. R. Civ. P. 60(a) made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024, "[c]lerical mistakes in judgments, [or] orders may be corrected by the court at any time." However, "while the appeal is pending [such mistakes] may be so corrected with leave of the appellate court." Fed. R. Civ. P. 60(a). The IRS claims the district court's order is correctable under Fed. R. Civ. P. 60(a),[4] while Mr. Craddock claims the order is only correctable under Fed. R. Civ.

---

[4] Rule 60(a) may be used to correct what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record. *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 225-26

P. 60(b),[5] as a correction of an error caused by inadvertence or mistake. Under

Fed. R. Civ. P. 60(b), the district court can only amend its judgment for mistakes

within one year from the date originally awarded. If Mr. Craddock is correct, the

motion must be denied since it was filed beyond the one-year limitation. Based

on our review of the record, it is unclear whether the difference between the

stipulated interest and any interest stated in the judgment was due to a clerical

error or mistake. Therefore, unable to rule on the motion, we remand this

question to the bankruptcy court to determine whether the judgment contains a

---

(10th Cir. 1980). Such a correction should not require additional proof. *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 226 (10th Cir. 1982); *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989). Rule 60(a) is not available to correct something that was deliberately done but later discovered to be wrong. *McNickle*, 888 F.2d at 682.

[5] Fed. R. Civ. P. 60(b) provides, in part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for ... (1) mistake, inadvertence, surprise, or excusable neglect .... The motion shall be made within a reasonable time, and for reason[] (1) ... not more than one year after the judgment, order, or proceeding was entered or taken.

Rule 60(b) covers mistakes by counsel or parties regarding procedural errors, fraud in settlements, confusion etc. *See* Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2858 (1995).

clerical error correctable under Fed. R. Civ. P. 60(a).[6]  Despite our remand, we

consider this judgment final for purposes of this appeal, since the parties treated

the judgment as final, the interest is not an issue on direct appeal, and if the

judgment contains a clerical error or mistake, such error generally does not render

the judgment invalid.  *See Stone v. I.N.S.,* 514 U.S. 386, 401 (1995) (stating the

pendency of a Rule 60(b) motion does not affect the continuity of a prior-taken

appeal); *Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust*,

920 F.2d 651, 655-56 (10th Cir. 1990) (treating judgment as final where judgment

referenced another order and inadvertently omitted prejudgment interest not part

of the primary relief sought in the parties' appeal; also stating clerical errors in a

judgment sought to be corrected under Rule 60(a) do not render the judgment

invalid).  We now address the merits of this appeal.


## DISCUSSION

*Failure to timely file tax return penalties*

The IRS claims the district court erred in reversing the bankruptcy court's

---

[6]  Mr. Craddock also filed a motion to strike the IRS's reply motion to Mr. Craddock's response motion.  Because the Federal Rules of Appellate Procedure do not provide authority to file a reply motion and the IRS's reply motion contains arguments not made in its original motion, we grant Mr. Craddock's motion to strike.  *See* Fed. R. App. P. 27.

finding that no reasonable cause existed for Mr. Craddock's failure to timely file his 1981, 1982, and 1985 tax returns.  We agree.  To avoid a late filing penalty under I.R.C. § 6651(a)(1),[7] the taxpayer bears the "heavy burden" of proving the failure to timely file was both due to reasonable cause and  not due to willful neglect.  *Boyle*, 469 U.S. at 245 (quoting I.R.C. § 6651(a)(1)); *Jackson v. Commissioner*, 864 F.2d 1521, 1527 (10th Cir. 1989).  Reasonable cause exists "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless *unable* to file the return within the prescribed time."  Treas. Reg. § 301.6651-1(c) (emphasis added).  The term "willful neglect" means "a conscious, intentional failure or reckless indifference."  *Boyle*, 469 U.S. at 245.

Whether the elements that constitute "reasonable cause" are present is a question of fact.  *Boyle*, 469 U.S. at 249 n.8.  What elements constitute "reasonable cause" is a question of law.  *Id.*  We review the district and bankruptcy courts' legal determinations *de novo*, and the bankruptcy court's factual findings for clear error.  *In re Yellow Cab Coop. Ass'n*, 132 F.3d 591, 596-97 (10th Cir. 1997); *Jackson*, 864 F.2d at 1527.

---

[7] I.R.C. § 6651(a)(1) imposes a five percent penalty on the tax due on the return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect."

We recognize Mr. Craddock exercised some care in attempting to keep up with his accounting and tax functions by selectively increasing his accounting staff, having outside accounting firms review the tax returns, and replacing his antiquated computer system with one recommended by experts. However, these facts are not enough to escape a late filing penalty under I.R.C. § 6661. Although the *Boyle* bright-line test[8] does not apply, since Mr. Craddock did more than just rely on his employees to timely file his tax returns,[9] Mr. Craddock failed to exercise "ordinary business care and prudence" in ensuring his returns were timely filed and failed to show that he was "unable" to file the returns on time. Mr. Craddock's reasons for his failure to timely file, such as his records or information could not be assimilated fast enough, his accounting staff was overworked, and his computer system was inefficient, are not reasonable cause. A taxpayer is "expected in the exercise of ordinary business care and prudence ... not [to] take on such a load that he could not fulfill his own legal obligations within the required time." *Dustin v. Commissioner*, 467 F.2d 47, 50 (9th Cir.

---

[8] In *Boyle*, the Supreme Court adopted a bright-line rule that a situation where the taxpayer turns over his records to his agent and merely relies on the agent to timely file his returns, does not constitute reasonable cause as a matter of law. 469 U.S. at 252.

[9] Mr. Craddock also increased his staff when he realized his present accounting staff was unable to handle its functions, and he replaced his antiquated accounting system to aid in assimilating information faster.

1972) (internal quotation marks omitted); *Oliver v. Commissioner*, 73 T.C.M. (CCH) 2035, 2051 (1997) ("[A] taxpayer is not excused from timely filing his income tax return merely because he is overworked."); *Merriam v. Commissioner*, 70 T.C.M. (CCH) 627 (1995) ("[A] heavy workload and preoccupation with business affairs do not constitute reasonable cause for the untimely filing of a tax return."), *aff'd*, 107 F.3d 877 (9th Cir. 1997) (table opinion). In addition, the unavailability of business records or difficulty in obtaining records, unless such records are destroyed, is generally not a reasonable cause for failure to file a tax return. *Robinson v. Commissioner*, 68 T.C.M. (CCH) 1158, 1164 (1994); *Young v. Commissioner*, 58 T.C.M. (CCH) 1, 8-9 (1989), *aff'd*, 937 F.2d 609 (6th Cir. 1991) (table opinion). The complexity of one's affairs also does not give reasonable cause. *Edgar v. Commissioner*, 56 T.C. 717, 762-63 (1971). Nor does the preoccupation with audits constitute reasonable cause. *C.f. Morgan v. Commissioner*, 807 F.2d 81, 83 (6th Cir. 1986) (ruling the preoccupation with litigation is not reasonable cause).

In addition, despite his efforts to improve the situation, Mr. Craddock failed to prove that he was *unable* to file the tax returns on time as required by Treas. Reg. § 301.6651-1(c)(1). The IRS contends the district court erred in overruling the bankruptcy court's finding that the circumstances surrounding Mr.

Craddock's late filed tax returns were within "his ability to control." The bankruptcy court's findings are not clearly erroneous. A factual finding is "clearly erroneous when, although there is some evidence to support it, upon review of the entire record the appellate court is left with the definite and firm conviction that a mistake has been made." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1384 (10th Cir. 1991). Evidence in the record reveals Mr. Craddock knew his businesses were expanding rapidly and his tax affairs were becoming complex. For over three years, he was aware his accounting staff filed his tax returns over ten months late, yet he continued to delegate his tax return responsibilities to them. He consciously decided not to engage an outside accounting firm to prepare his tax returns. He also knew his new Basic-4 computer system was inadequate, yet he continued to use the system until 1987. As we are convinced no mistake has been made based on these facts, we rule the bankruptcy court's finding was not clearly erroneous.

To support his position, Mr. Craddock relies on *In Re Hudson Oil Co.*, 91 B.R. 932 (Bankr. D. Kansas 1988). In that case, a bankruptcy trustee was appointed over the taxpayer's bankruptcy estate three weeks before the taxpayer's 1983 federal tax return was due. *Id.* at 936. Because of the short length of time to the filing deadline and the disorganization of the taxpayer's books, the trustee's

accountant filed the return late. *Id.* at 939. Consequently, the IRS imposed a late filing penalty. *Id.* at 940. In response to the trustee's defense of reasonable cause, the bankruptcy court found the trustee did all he could do under the circumstances to file the tax return, but was physically unable to timely file the return due to the short time period to file and the taxpayer's books were in such a disarray. *Id.* at 950.

We find Mr. Craddock's case distinguishable. Unlike the trustee in *Hudson* who had only three weeks to prepare and file the tax return, Mr. Craddock knew his tax return deadlines and responsibilities long before the returns were actually due. In addition, Mr. Craddock controlled his books for a long time before the returns were due, unlike the trustee in *Hudson*. Although Mr. Craddock argues his situation is similar to the facts in *Hudson,* in that he also was unable to prepare the return as a result of his books not being final, we disagree. A distinguishing feature in *Hudson* is that the books were not ready through no fault of the trustee, while in Mr. Craddock's case, he knew on an ongoing basis that his books and tax returns were not being prepared timely, yet despite his unsuccessful efforts, he failed to correct the situation. Furthermore, Mr. Craddock even testified his books were not in disarray since "all the facts were there," but he was just having problems "pulling it all together." Mr. Craddock's situation is not one

-15-

where he was unable to prepare his tax returns, but rather where his decisions merely made it challenging. His decisions do not excuse him from complying with his tax obligations.[10] Although Mr. Craddock made efforts to comply with the tax law, his situation was not one requiring a flexible approach to tax return deadlines.[11] As the Fifth Circuit has observed: "[t]he federal tax statute has 'placed the responsibility for filing (of a) return on time squarely upon each and every taxpayer.' *Charles C. Rice* [*Rice v. Commissioner*], 14 T.C. 503 (1950), at 509. If every taxpayer who ... was too busy to file a return escaped the penalty for failure to file, our tax system would soon collapse." *Logan Lumber Co. v.*

---

[10] Mr. Craddock's situation is comparable to the circumstances in *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1193 (6th Cir. 1996), and *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 318 (9th Cir. 1993), where the courts held the corporate taxpayers were not disabled from complying with their tax return filing deadlines even though their employees responsible for such filings secretly failed to comply with the deadlines without the managements' knowledge. The courts ruled despite the companies prudence and care in overseeing its employees, the situation was ultimately within the companies' control. *Valen*, 90 F.3d at 1193; *Conklin Bros.*, 986 F.2d at 318-19. Similarly in Mr. Craddock's case, although he increased his accounting staff and installed a new computer system to comply with his tax obligations, the situation was within Mr. Craddock's ability to control and therefore he was not "unable" to file his tax returns on time.

[11] By allowing Mr. Craddock's situation to constitute "reasonable cause," we would open a Pandora's Box of excuses which would effectively erode tax return filing deadlines. As the Supreme Court observed in *Boyle*, "our system of self-assessment ... of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates." 469 U.S. at 249.

*Commissioner*, 365 F.2d 846, 854 (5th Cir. 1966).

Mr. Craddock claims it would have been inappropriate for him to file inaccurate tax returns. A tax return does not have to be completely accurate, but must be based on the best information available, *Oliver*, 73 T.C.M. (CCH) at 2051, and may be amended later if necessary, *Estate of Vriniotis v. Commissioner*, 79 T.C. 298, 311 (1982). Mr. Craddock testified his tax information was available but just not synthesized. Without more, Mr. Craddock has failed to prove he could not file a return based on the best information available and later amend the return as permitted by law.

Mr. Craddock also contends that if he filed returns he knew to be inaccurate, he would have risked being subject to I.R.C. § 7206(1) which makes it a felony for "any person" to "[w]illfully make[] and subscribe[] any return ... which he does not believe to be true and correct as to every material matter." We reject Mr. Craddock's contention. First of all, the record fails to support Mr. Craddock's assertion the returns would have been inaccurate as to every material matter. The evidence on this issue is Mr. Craddock's testimony that he "didn't want to file returns that were not right," and Mr. Rudnick's testimony that "there would be a high degree or probability and knowledge that there were errors in the

tax return, and our effort was to file the best quality tax return we could."

Second, to commit a felony under I.R.C. § 7206(1), the taxpayer must have the specific intent to violate the law. *See United States v. Pomponio,* 429 U.S. 10, 12 (1976); *United States v. Winchell*, 129 F.3d 1093, 1096-97 (10th Cir. 1997). The record does not support Mr. Craddock had that intent.

Finally, the IRS claims the undisputed facts constitute willful neglect as a matter of law. The IRS contends Mr. Craddock "was aware at all times that his accounting staff was not filing timely returns" and yet purposely did not instruct his accounting staff to prepare the returns because he knew the returns would be inaccurate. Therefore, relying on *Boyle*, the IRS claims Mr. Craddock's conscious and intentional failure to timely file his return was willful neglect. Due to our dispositive holding that Mr. Craddock failed to establish reasonable cause, we do not consider this issue further.

*Substantial Understatement of Tax Penalty*

The IRS's final claim is the district and bankruptcy courts erred in computing Mr. Craddock's 1985 understatement of tax penalty pursuant to I.R.C. § 6661. Since the facts are largely undisputed, we review the bankruptcy and district court's interpretation of law *de novo*. *Morrissey v. Internal Revenue*

*Service* (*In re EWC, Inc.*), 114 F.3d 1071, 1073 (10th Cir. 1997).

The 1985 version of I.R.C. § 6661(a) imposed a twenty-five percent penalty on the amount of any underpayment of tax attributable to a substantial understatement of tax.[12] An understatement means the excess of the correct amount of tax required to be shown on the return for the taxable year, over the amount of tax actually shown on the return for that year. I.R.C. § 6661(b)(2)(A). However, the amount of understatement "shall be reduced by that portion of the understatement which is attributable to ... any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return." I.R.C. § 6661(b)(2)(B).

After its audit of Mr. Craddock's 1985 tax return, the IRS followed Treas. Reg. § 1.6661-2 in computing a substantial understatement of tax penalty of $61,825. Under Treas. Reg. § 1.6661-2(c)(1)-(2), an understatement of tax is the excess of the correct amount of tax required to be shown on the return, over the amount of tax shown on the return for the taxable year. To reduce the

---

[12] An understatement of tax is substantial if it exceeds the greater of either ten percent of the correct amount of the tax required to be shown on the return, or $5,000. I.R.C. § 6661(b)(1).

understatement for adequately disclosed items, the regulation provides the amount of tax shown on the return is determined by computing the tax as if the items adequately disclosed had been properly reported. Treas. Reg. § 1.6661-1(d)(2). Therefore, the IRS computed the amount of tax shown on Mr. Craddock's tax return for purposes of the penalty by adding to the amount of alternative minimum tax (AMT) income actually shown on Mr. Craddock's tax return (-$5,973,827), the post-audit AMT income adjustments of $7,209,720 less the AMT adjustment of $3,378,385 for the adequately disclosed Airport Raintree transaction. This resulted in -$2,142,492 of AMT income and $0 tax for the amount shown on his return. Consequently, the IRS deducted $0 (the amount of tax shown on the return) from $247,299, the correct amount of tax after the IRS audit, to arrive at a understatement of tax of $247,299 and a penalty of $61,825 (25% of $247,299).

The bankruptcy and district courts rejected the IRS's computation, agreeing with Mr. Craddock that all of the understatement of tax, $247,299, relates to the adequately disclosed Airport Raintree transaction, and therefore no penalty was due. Under the courts' approach, the penalty is computed by taking the corrected amount of AMT income after all audit adjustments, $1,235,893 and reversing out the AMT income adjustment relating to the adequately disclosed Airport Raintree transaction, $3,378,385 arriving at -$2,142,492 AMT income, or $0 tax. From

this calculation, the courts reasoned that without the AMT income adjustment from the Airport Raintree transaction, no underpayment would exist. Consequently, they concluded Mr. Craddock was not liable for any substantial understatement penalty since all of the underpayment was attributable to an adequately disclosed item. We now must decide which interpretation of I.R.C. § 6661 is proper.

We believe the statute, I.R.C. § 6661((b)(2)(B)(ii), is ambiguous as to how a taxpayer precisely computes the "portion of the understatement attributable to" disclosed items. Pursuant to I.R.C. § 7805(a), Congress delegated authority to the Secretary of the Treasury to "prescribe all needful rules and regulations for the enforcement of [the Internal Revenue Code]." Under this authority, the Secretary of the Treasury adopted Treas. Reg. § 1.6661-2 to implement I.R.C. § 6661. We generally presume treasury regulations are valid "and 'are not to be invalidated except for weighty reasons.'" *See Pepcol Mfg. Co. v. Commissioner*, 28 F.3d 1013, 1015 (10th Cir. 1993) (quoting *United Telecomm., Inc. v. Commissioner*, 589 F.2d 1383, 1387 (10th Cir. 1978), *cert. denied*, 442 U.S. 917 (1979)). A regulation "'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.'" *United Telecomm.*, 589 F.2d at 1387 (quoting *Fulman v. United States*, 434 U.S. 528, 533 (1978)). In determining whether the regulation

implements the congressional mandate in a reasonable manner, we "'look to see whether the regulation "harmonizes with the plain language of the statute, its origin, and its purpose."'" *True v. United States*, 894 F.2d 1197, 1202 (10th Cir. 1990) (quoting *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979)).

The language of the statute offers no guidance as to how to compute "the portion of the understatement attributable to" disclosed items. See I.R.C. § 6661(b)(2). However, we know the purpose of the penalty under the statute is to deter taxpayers from playing "audit lottery" by taking undisclosed questionable positions on their returns in hopes their aggressive positions will go undetected. S. Rep. No. 97-494, at 272-73 (1982), *reprinted at* 1982 U.S.C.C.A.N. 781, 1019. Therefore, by reducing the understatement for disclosed items in computing the penalty, the statute promotes disclosure.

Consistent with this policy goal, Treas. Reg. § 1.6661-2(d) treats a taxpayer as if he had properly reported the items that he disclosed to compute the tax penalty. We think this construction reasonably implements the policy behind § 6661(b) by rewarding a taxpayer who discloses an item for purposes of computing the understatement of tax penalty. The effect of this treatment is it

reduces the understatement for items disclosed as required by I.R.C. § 6661(b)(2).

However, the regulation also effectively restricts the reduction of the understatement for disclosed items in cases where the taxpayer would be subject to the same understatement penalty if he had properly reported the disclosed items. For example, in Mr. Craddock's case, based on the record before us, had he properly reported the Airport Raintree transaction that he disclosed, all other adjustments remaining the same, he still would have been liable for the same understatement of tax penalty as he is now, $ 61,825.[13] Therefore, in his case, the penalty under the regulation does not appear to be reduced for disclosed items, because he would be liable for the same penalty as he is now if he had properly reported the disclosed items. Despite this anomaly, we find Treasury's interpretation reasonable. Even though this limit is not prescribed by the statute, we consider the regulation reasonably implements the statute in promoting disclosure but not rewarding it more than had the taxpayer properly reported the item in his tax return. This interpretation reasonably accommodates the statute's

---

[13] Mr. Craddock's correct tax would be the same, $247,299. His revised tax shown on his return would be $0 (AMT on -$5,973,827 reported income, plus $3,378,385 income on Airport Raintree transaction). Therefore, the understatement of tax penalty would be 25% of $247,299 ($247,299 correct tax less $0 tax shown on return), or $61,825.

-23-

intention with the competing interest of fairness. *See Atlantic Mut. Ins. Co. v. Commissioner*, 118 S. Ct. 1413, 1417, 1418 (1998) (ruling the Treasury's definition of "reserve strengthening" under I.R.C. § 846 need not be "microscopically fair" but rather a "reasonable accommodation).

In a similar case, *United Telecomm.* 589 F.2d at 1387-88, we upheld Treas. Reg. § 1.46-3(c)(1), which prevented a taxpayer from taking a double investment tax credit, even though the statute did not contain a specific prohibition against a double credit. As the court held in that case, the logical presumption is the statute opposed a double credit. *Id.* at 1388. Likewise, the logical presumption in this case is Congress intended to promote disclosure, but it certainly did not intend to reward disclosure over actually properly reporting an item on the taxpayer's tax return. The regulation at issue not only implements Congress' intent to reward disclosure by treating disclosed items as if they had been properly reported for purposes of the tax penalty, but it also logically limits rewarding disclosure above properly reporting an item for purposes of computing the understatement penalty.

Furthermore, we may presume the validity of a regulation which remains unchanged after the statute it implements has been re-enacted. *See Cottage Sav.*

*Assoc. v. Commissioner*, 499 U.S. 554, 561 (1991); *see also Maurer v. United States*, 284 F.2d 122, 124 (10th Cir. 1960). Treas. Reg. § 1.6661-2 has remained unchanged since 1985. 50 Fed. Reg. 12,014 (1985). In contrast, the statute, I.R.C. § 6661 has been amended several times and re-enacted under I.R.C. § 6662 in 1989. Amended by Pub. L. 97-354, § 5(a)(42), 96 Stat. 1697 (1982); Pub. L. 98-369, Div. A, Title VII, § 714(h)(3), 98 Stat. 962 (1984); Pub. L. 99-509, Title VIII, § 8002(a), (c), 100 Stat. 1951 (1986); Pub. L. 99-514, Title XV, § 1504(a), 100 Stat. 2743 (1986); Repealed and re-enacted by Pub. L. 101-239, Title VII, § 7721(c)(2), 103 Stat. 2399 (1989). Since Congress' amendments and re-enactment of the statute has not impacted the regulation, we may presume the regulation received congressional approval. *Cottage Sav.*, 499 U.S. at 561.

Mr. Craddock claims the regulation is contrary to I.R.C. § 6661 because under the statute, the understatement should be reduced first for disclosed items. Mr. Craddock misconstrues the statute. The statute does not do what Mr. Craddock suggests, but rather, requires the understatement be reduced by the "portion of the understatement which is attributable" to disclosed items. I.R.C. § 6661(b)(2)(B)(ii). As we have concluded above, we find this language ambiguous, and Treas. Reg. § 1.6661-2(c)-(d) reasonably interprets the statute.

Based on the reasons above, we find Treas. Reg. § 1.6661-2(c)-(d) not unreasonable or plainly inconsistent with I.R.C. § 6661. Therefore, since we find the regulation is a valid interpretation of the statute, the district and bankruptcy courts erred by not following it.

Accordingly, we **REVERSE** the district court's decision that Mr. Craddock established reasonable cause, and therefore reinstate the IRS late filing penalties for years 1981, 1982, and 1985. We **REVERSE** the district and bankruptcy court's calculation of the substantial understatement of tax penalty for 1985 and **REMAND** to the bankruptcy court to calculate the proper penalty in accordance with Treas. Reg. § 1.6661-2(d). We **REMAND** the IRS's motion for leave to correct a mistake in the bankruptcy court's judgment to the bankruptcy court to determine whether its 1994 judgment contains a clerical error or mistake for interest.

PUBLISH

**F I L E D**
United States Court of Appeals
Tenth Circuit

MAY 1 1998

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re JAMES BERRY CRADDOCK, d/b/a
Craddock Development Company,

    Debtor,

----------------------

UNITED STATES OF AMERICA,
INTERNAL REVENUE SERVICE,

    Claimant-Appellant,

v.

JAMES BERRY CRADDOCK,

    Debtor-Appellee.

No. 95-1437

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 94-K-175)**

Laurie Snyder (Henry Lawrence Solano, United States Attorney, and Gary D. Gray with her on the briefs), Department of Justice, Washington, D.C., for Claimant-Appellant.

John Lawrence Hamil (Richard C. Morris with him on the brief) of Hamil Professional Corporation, Denver, Colorado, for Debtor-Appellee.

Before **BRORBY,** Circuit Judge, **McKAY**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

**BRORBY**, Circuit Judge.

_____

The Internal Revenue Service ("IRS") appeals the district court's denial of late filing penalties and computation of a substantial underpayment of tax penalty assessed against Mr. James Berry Craddock's Chapter 11 bankruptcy estate.  The IRS contends the district court erred in reversing the bankruptcy court's finding that no reasonable cause existed for Mr. Craddock's failure to timely file his federal 1981, 1982, and 1985 tax returns, and affirming the bankruptcy court's computation of understatement of tax penalty for Mr. Craddock's 1985 tax liability.  We exercise jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291, and reverse.

## BACKGROUND

The IRS filed proofs of claims for taxes, interest and penalties against Mr. Craddock's bankruptcy estate relating to tax years 1979-1986.[1]  Most the claims were resolved by agreement except for the two issues in this appeal.  The relevant facts are as follows.

_____

[1]  The penalties included additions to tax for negligence under 26 U.S.C. ("I.R.C.") § 6653(a) and failure to file timely tax returns under I.R.C. § 6651(a) for each of the tax years 1981-1985, and substantial understatement of tax penalties pursuant to I.R.C.§ 6661 for tax years 1982, 1983, and 1985.

*Failure to timely file tax returns.*

During the years 1981-1985, Mr. Craddock owned and operated a real estate development company, Craddock Development Company ("CDC"), as a sole proprietor. He reported his CDC income in his federal individual income tax returns for each of the relevant tax years. Despite obtaining extensions, Mr. Craddock filed each of his income tax returns for the years 1981, 1982, and 1985 over ten months late. Consequently, the IRS assessed late filing penalties under I.R.C. § 6651.[2] Mr. Craddock objected on grounds his failure to timely file the returns was due to reasonable cause and not willful neglect, an excuse permitted by I.R.C. § 6651(a). In support of his objection, Mr. Craddock presented his testimony and testimony of Mr. Robert J. Rudnick, a former CDC accountant responsible for reviewing Mr. Craddock's tax returns from July 1982 through 1985. Their testimony provided the following evidence.

Mr. Craddock delegated his tax return preparation duties to CDC's accounting staff. During the years in question, CDC and its related businesses experienced exponential growth and complexity, resulting in the addition of at least twenty-five other businesses arranged as pass-through entities such as

---

[2] The late-filing penalties disputed in this appeal are $82,540 for 1981, $1,665 for 1982, and $61,806 for 1985.

partnerships and S-corporations. To handle the additional workload, Mr. Craddock added another accounting department and increased his accounting personnel from five in the early 1980's to fifty by 1985. Mr. Craddock hired outside accounting firms to review the tax returns prepared by his accounting staff. From 1981 through 1985, Mr. Craddock paid approximately $1 million per year (about fifty percent of his total payroll) on accounting and tax staff, and more than $100,000 per year in fees to his independent certified public accounting firm.

Mr. Craddock also purchased a new accounting system, the Basic-4 system, to help manage his growing business. However the Basic-4 system failed to perform as quickly and effectively as represented. Despite his efforts, Mr. Craddock knew his tax returns were still not being timely filed. Yet, he did not instruct his staff to timely file the returns since he wanted the returns to be accurate. He also chose not to hire outside accounting firms to help prepare tax returns because he felt "[t]hey were too expensive."

Mr. Rudnick testified the untimely filing of Mr. Craddock's tax returns was also due to a high rate of personnel turnover, extensive audits of prior years' tax returns which required substantial amounts of the accounting department's time,

and the conversion to CDC's accounts from the accrual to the cash basis.

The bankruptcy court allowed the IRS's late filing penalties for several reasons. The court cited *United States v. Boyle*, 469 U.S. 241 (1985) in concluding Mr. Craddock's reliance on his accounting staff for the ministerial task of filing tax returns was not "reasonable cause." In addition, the court held the growth and complexity of one's business does not constitute an excuse. Furthermore, the court ruled Mr. Craddock was liable for the penalties because it found "the circumstances were clearly within Mr. Craddock's ability to control."

The district court reversed, ruling the bankruptcy court improperly applied *Boyle* to the facts of this case since Mr. Craddock did more than merely rely on his accounting department. The court held the proper legal standard was whether Mr. Craddock exercised ordinary business care and prudence in attempting to file his returns on time. The court concluded Mr. Craddock exercised such care, and overruled the bankruptcy court's finding the circumstances were within Mr. Craddock's ability to control. The IRS appeals the district court's decision.

*Substantial Understatement of Tax*

The IRS assessed a $61,825 understatement of tax penalty under I.R.C. § 6661(a) (1985),[3] as an addition to Mr. Craddock's 1985 tax liability. Under the 1985 version of I.R.C. § 6661, an understatement of tax is the difference between the amount of tax *required* to be reported on a return, and the amount of tax *actually reported*, reduced by the amount of tax attributable to any item disclosed, but not reported in the tax return. I.R.C. § 6661(b)(2)(A), (B). Mr. Craddock's corrected tax required to be reported in his 1985 tax return was $247,299 after IRS audit adjustments. He reported no tax. He disclosed but did not report income of $3,378,385 from the "Airport Raintree" transaction. Following Treas. Reg. § 1.6661-2(c) and (d), the IRS computed Mr. Craddock's substantial understatement penalty by recomputing his tax shown on his return as if he had properly reported the Airport Raintree transaction for tax purposes, resulting in a revised tax shown on his return of $0, and a substantial understatement of tax of $247,299.

Mr. Craddock objected to the penalty on the ground that under the statute's

---

[3] I.R.C. § 6661(a) (repealed and material portions recodified in 1989 in § 6662) imposed a twenty-five percent penalty on a substantial underpayment of tax attributable to an understatement of tax.

plain language, if the understatement was reduced "by that portion of the understatement which is attributable to ... any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed," he would not be liable for a penalty. I.R.C. § 6661(b)(2)(B). The bankruptcy court agreed, rejecting the IRS's calculation in accordance with Treas. Reg. § 1.6661-(c) and ruling there was no understatement of tax within the meaning of I.R.C. § 6661. It found no understatement would exist if the income attributable to the Airport Raintree transaction was excluded from the computation of his corrected tax required to be shown on his return. The district court affirmed by deciding the bankruptcy court's computation was consistent with the purposes of I.R.C. § 6661(b)(2)(B)(ii) "to deter the use of undisclosed questionable reporting decisions" since it "reversed out" the effect of the disclosed Airport Raintree transaction. The IRS appeals.

The IRS also filed a motion in this court in July 1997 for leave to file a motion in the bankruptcy court to correct a mistake in the bankruptcy court's judgment filed January 7, 1994, almost three years ago. The IRS contends the judgment did not accurately reflect the amount of interest contained in the parties' stipulation filed March 9, 1993. The bankruptcy court's 1994 judgment awarded taxes, penalties and interest specified in the IRS's Corrected Calculations filed

with the court on November 3, 1993. The IRS filed its Corrected Calculations pursuant to the court's request that it calculate negligence penalties, not Mr. Craddock's total tax liability including all penalties and interest. The IRS's Corrected Calculations and hence the judgment appears not to have included the amount of interest stipulated by the parties.

Under Fed. R. Civ. P. 60(a) made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024, "[c]lerical mistakes in judgments, [or] orders may be corrected by the court at any time." However, "while the appeal is pending [such mistakes] may be so corrected with leave of the appellate court." Fed. R. Civ. P. 60(a). The IRS claims the district court's order is correctable under Fed. R. Civ. P. 60(a),[4] while Mr. Craddock claims the order is only correctable under Fed. R. Civ. P. 60(b),[5] as a correction of an error caused by inadvertence or mistake. Under

---

[4] Rule 60(a) may be used to correct what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record. *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 225-26 (10th Cir. 1980). Such a correction should not require additional proof. *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 226 (10th Cir. 1982); *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989). Rule 60(a) is not available to correct something that was deliberately done but later discovered to be wrong. *McNickle*, 888 F.2d at 682.

[5] Fed. R. Civ. P. 60(b) provides, in part:

> On motion and upon such terms as are just, the court
> may relieve a party ... from a final judgment, order, or

-8-

Fed. R. Civ. P. 60(b), the district court can only amend its judgment for mistakes within one year from the date originally awarded. If Mr. Craddock is correct, the motion must be denied since it was filed beyond the one-year limitation. Based on our review of the record, it is unclear whether the difference between the stipulated interest and any interest stated in the judgment was due to a clerical error or mistake. Therefore, unable to rule on the motion, we remand this question to the bankruptcy court to determine whether the judgment contains a clerical error correctable under Fed. R. Civ. P. 60(a).[6] Despite our remand, we consider this judgment final for purposes of this appeal, since the parties treated the judgment as final, the interest is not an issue on direct appeal, and if the judgment contains a clerical error or mistake, such error generally does not render

> proceeding for ... (1) mistake, inadvertence, surprise, or excusable neglect .... The motion shall be made within a reasonable time, and for reason[] (1) ... not more than one year after the judgment, order, or proceeding was entered or taken.

Rule 60(b) covers mistakes by counsel or parties regarding procedural errors, fraud in settlements, confusion etc. *See* Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2858 (1995).

[6] Mr. Craddock also filed a motion to strike the IRS's reply motion to Mr. Craddock's response motion. Because the Federal Rules of Appellate Procedure do not provide authority to file a reply motion and the IRS's reply motion contains arguments not made in its original motion, we grant Mr. Craddock's motion to strike. *See* Fed. R. App. P. 27.

the judgment invalid.  *See Stone v. I.N.S.,* 514 U.S. 386, 401 (1995) (stating the

pendency of a Rule 60(b) motion does not affect the continuity of a prior-taken

appeal); *Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust,*

920 F.2d 651, 655-56 (10th Cir. 1990) (treating judgment as final where judgment

referenced another order and inadvertently omitted prejudgment interest not part

of the primary relief sought in the parties' appeal; also stating clerical errors in a

judgment sought to be corrected under Rule 60(a) do not render the judgment

invalid).  We now address the merits of this appeal.

## DISCUSSION

*Failure to timely file tax return penalties*

The IRS claims the district court erred in reversing the bankruptcy court's

finding that no reasonable cause existed for Mr. Craddock's failure to timely file

his 1981, 1982, and 1985 tax returns.  We agree.  To avoid a late filing penalty

under I.R.C. § 6651(a)(1),[7] the taxpayer bears the "heavy burden" of proving the

failure to timely file was both due to reasonable cause and  not due to willful

neglect.  *Boyle*, 469 U.S. at 245 (quoting I.R.C. § 6651(a)(1)); *Jackson v.*

---

[7] I.R.C. § 6651(a)(1) imposes a five percent penalty on the tax due on the return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect."

-10-

*Commissioner*, 864 F.2d 1521, 1527 (10th Cir. 1989).  Reasonable cause exists

"[i]f the taxpayer exercised ordinary business care and prudence and was

nevertheless *unable* to file the return within the prescribed time."  Treas. Reg. §

301.6651-1(c) (emphasis added).  The term "willful neglect" means "a conscious,

intentional failure or reckless indifference."  *Boyle*, 469 U.S. at 245.

Whether the elements that constitute "reasonable cause" are present is a

question of fact.  *Boyle*, 469 U.S. at 249 n.8.  What elements constitute

"reasonable cause" is a question of law.  *Id.*  We review the district and

bankruptcy courts' legal determinations *de novo*, and the bankruptcy court's

factual findings for clear error.  *In re Yellow Cab Coop. Ass'n*, 132 F.3d 591, 596-

97 (10th Cir. 1997); *Jackson*, 864 F.2d at 1527.

We recognize Mr. Craddock exercised some care in attempting to keep up

with his accounting and tax functions by selectively increasing his accounting

staff, having outside accounting firms review the tax returns, and replacing his

antiquated computer system with one recommended by experts.  However, these

facts are not enough to escape a late filing penalty under I.R.C. § 6661.  Although

-11-

the *Boyle* bright-line test[8] does not apply, since Mr. Craddock did more than just rely on his employees to timely file his tax returns,[9] Mr. Craddock failed to exercise "ordinary business care and prudence" in ensuring his returns were timely filed and failed to show that he was "unable" to file the returns on time. Mr. Craddock's reasons for his failure to timely file, such as his records or information could not be assimilated fast enough, his accounting staff was overworked, and his computer system was inefficient, are not reasonable cause. A taxpayer is "expected in the exercise of ordinary business care and prudence ... not [to] take on such a load that he could not fulfill his own legal obligations within the required time." *Dustin v. Commissioner*, 467 F.2d 47, 50 (9th Cir. 1972) (internal quotation marks omitted); *Oliver v. Commissioner*, 73 T.C.M. (CCH) 2035, 2051 (1997) ("[A] taxpayer is not excused from timely filing his income tax return merely because he is overworked."); *Merriam v. Commissioner*, 70 T.C.M. (CCH) 627 (1995) ("[A] heavy workload and preoccupation with business affairs do not constitute reasonable cause for the untimely filing of a tax

---

[8] In *Boyle,* the Supreme Court adopted a bright-line rule that a situation where the taxpayer turns over his records to his agent and merely relies on the agent to timely file his returns, does not constitute reasonable cause as a matter of law. 469 U.S. at 252.

[9] Mr. Craddock also increased his staff when he realized his present accounting staff was unable to handle its functions, and he replaced his antiquated accounting system to aid in assimilating information faster.

return."), *aff'd*, 107 F.3d 877 (9th Cir. 1997) (table opinion).  In addition, the unavailability of business records or difficulty in obtaining records, unless such records are destroyed, is generally not a reasonable cause for failure to file a tax return.  *Robinson v. Commissioner*, 68 T.C.M. (CCH) 1158, 1164 (1994); *Young v. Commissioner*, 58 T.C.M. (CCH) 1, 8-9 (1989), *aff'd*, 937 F.2d 609 (6th Cir. 1991) (table opinion).  The complexity of one's affairs also does not give reasonable cause.  *Edgar v. Commissioner*, 56 T.C. 717, 762-63 (1971).  Nor does the preoccupation with audits constitute reasonable cause.  *C.f. Morgan v. Commissioner*, 807 F.2d 81, 83 (6th Cir. 1986) (ruling the preoccupation with litigation is not reasonable cause).

In addition, despite his efforts to improve the situation, Mr. Craddock failed to prove that he was *unable* to file the tax returns on time as required by Treas. Reg. § 301.6651-1(c)(1).  The IRS contends the district court erred in overruling the bankruptcy court's finding that the circumstances surrounding Mr. Craddock's late filed tax returns were within "his ability to control."  The bankruptcy court's findings are not clearly erroneous.  A factual finding is "clearly erroneous when, although there is some evidence to support it, upon review of the entire record the appellate court is left with the definite and firm conviction that a mistake has been made."  *Daemi v. Church's Fried Chicken,*

*Inc.*, 931 F.2d 1379, 1384 (10th Cir. 1991). Evidence in the record reveals Mr. Craddock knew his businesses were expanding rapidly and his tax affairs were becoming complex. For over three years, he was aware his accounting staff filed his tax returns over ten months late, yet he continued to delegate his tax return responsibilities to them. He consciously decided not to engage an outside accounting firm to prepare his tax returns. He also knew his new Basic-4 computer system was inadequate, yet he continued to use the system until 1987. As we are convinced no mistake has been made based on these facts, we rule the bankruptcy court's finding was not clearly erroneous.

To support his position, Mr. Craddock relies on *In Re Hudson Oil Co.*, 91 B.R. 932 (Bankr. D. Kansas 1988). In that case, a bankruptcy trustee was appointed over the taxpayer's bankruptcy estate three weeks before the taxpayer's 1983 federal tax return was due. *Id.* at 936. Because of the short length of time to the filing deadline and the disorganization of the taxpayer's books, the trustee's accountant filed the return late. *Id.* at 939. Consequently, the IRS imposed a late filing penalty. *Id.* at 940. In response to the trustee's defense of reasonable cause, the bankruptcy court found the trustee did all he could do under the circumstances to file the tax return, but was physically unable to timely file the return due to the short time period to file and the taxpayer's books were in such a

disarray. *Id.* at 950.

We find Mr. Craddock's case distinguishable. Unlike the trustee in *Hudson* who had only three weeks to prepare and file the tax return, Mr. Craddock knew his tax return deadlines and responsibilities long before the returns were actually due. In addition, Mr. Craddock controlled his books for a long time before the returns were due, unlike the trustee in *Hudson.* Although Mr. Craddock argues his situation is similar to the facts in *Hudson,* in that he also was unable to prepare the return as a result of his books not being final, we disagree. A distinguishing feature in *Hudson* is that the books were not ready through no fault of the trustee, while in Mr. Craddock's case, he knew on an ongoing basis that his books and tax returns were not being prepared timely, yet despite his unsuccessful efforts, he failed to correct the situation. Furthermore, Mr. Craddock even testified his books were not in disarray since "all the facts were there," but he was just having problems "pulling it all together." Mr. Craddock's situation is not one where he was unable to prepare his tax returns, but rather where his decisions merely made it challenging. His decisions do not excuse him from complying with his tax obligations.[10] Although Mr. Craddock made efforts to comply with

---

[10] Mr. Craddock's situation is comparable to the circumstances in *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1193 (6th Cir. 1996), and *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 318 (9th Cir. 1993), where the

the tax law, his situation was not one requiring a flexible approach to tax return deadlines.[11]  As the Fifth Circuit has observed:  "[t]he federal tax statute has 'placed the responsibility for filing (of a) return on time squarely upon each and every taxpayer.'  *Charles C. Rice* [*Rice v. Commissioner*], 14 T.C. 503 (1950), at 509.  If every taxpayer who ... was too busy to file a return escaped the penalty for failure to file, our tax system would soon collapse."  *Logan Lumber Co. v. Commissioner*, 365 F.2d 846, 854 (5th Cir. 1966).

Mr. Craddock claims it would have been inappropriate for him to file inaccurate tax returns.  A tax return does not have to be completely accurate, but

---

courts held the corporate taxpayers were not disabled from complying with their tax return filing deadlines even though their employees responsible for such filings secretly failed to comply with the deadlines without the managements' knowledge.  The courts ruled despite the companies prudence and care in overseeing its employees, the situation was ultimately within the companies' control.  *Valen*, 90 F.3d at 1193; *Conklin Bros.*, 986 F.2d at 318-19.  Similarly in Mr. Craddock's case, although he increased his accounting staff and installed a new computer system to comply with his tax obligations, the situation was within Mr. Craddock's ability to control and therefore he was not "unable" to file his tax returns on time.

[11]  By allowing Mr. Craddock's situation to constitute "reasonable cause," we would open a Pandora's Box of excuses which would effectively erode tax return filing deadlines.  As the Supreme Court observed in *Boyle*, "our system of self-assessment ... of a tax simply cannot work on any basis other than one of strict filing standards.  Any less rigid standard would risk encouraging a lax attitude toward filing dates."  469 U.S. at 249.

must be based on the best information available, *Oliver*, 73 T.C.M. (CCH) at 2051, and may be amended later if necessary, *Estate of Vriniotis v. Commissioner*, 79 T.C. 298, 311 (1982).  Mr. Craddock testified his tax information was available but just not synthesized.  Without more, Mr. Craddock has failed to prove he could not file a return based on the best information available and later amend the return as permitted by law.

Mr. Craddock also contends that if he filed returns he knew to be inaccurate, he would have risked being subject to I.R.C. § 7206(1) which makes it a felony for "any person" to "[w]illfully make[] and subscribe[] any return ... which he does not believe to be true and correct as to every material matter."  We reject Mr. Craddock's contention.  First of all, the record fails to support Mr. Craddock's assertion the returns would have been inaccurate as to every material matter.  The evidence on this issue is Mr. Craddock's testimony that he "didn't want to file returns that were not right," and Mr. Rudnick's testimony that "there would be a high degree or probability and knowledge that there were errors in the tax return, and our effort was to file the best quality tax return we could."  Second, to commit a felony under I.R.C. § 7206(1), the taxpayer must have the specific intent to violate the law.  *See United States v. Pomponio,* 429 U.S. 10, 12 (1976); *United States v. Winchell*, 129 F.3d 1093, 1096-97 (10th Cir. 1997).  The

record does not support Mr. Craddock had that intent.

Finally, the IRS claims the undisputed facts constitute willful neglect as a matter of law. The IRS contends Mr. Craddock "was aware at all times that his accounting staff was not filing timely returns" and yet purposely did not instruct his accounting staff to prepare the returns because he knew the returns would be inaccurate. Therefore, relying on *Boyle*, the IRS claims Mr. Craddock's conscious and intentional failure to timely file his return was willful neglect. Due to our dispositive holding that Mr. Craddock failed to establish reasonable cause, we do not consider this issue further.

*Substantial Understatement of Tax Penalty*

The IRS's final claim is the district and bankruptcy courts erred in computing Mr. Craddock's 1985 understatement of tax penalty pursuant to I.R.C. § 6661. Since the facts are largely undisputed, we review the bankruptcy and district court's interpretation of law *de novo*. *Morrissey v. Internal Revenue Service* (*In re EWC, Inc.*), 114 F.3d 1071, 1073 (10th Cir. 1997).

The 1985 version of I.R.C. § 6661(a) imposed a twenty-five percent penalty on the amount of any underpayment of tax attributable to a substantial

understatement of tax.[12]  An understatement means the excess of the correct amount of tax required to be shown on the return for the taxable year, over the amount of tax actually shown on the return for that year.  I.R.C. § 6661(b)(2)(A).  However, the amount of understatement "shall be reduced by that portion of the understatement which is attributable to ... any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return."  I.R.C. § 6661(b)(2)(B).  The penalty's purpose is to deter taxpayers from playing "audit lottery" by taking undisclosed questionable positions on their returns in hopes their aggressive positions will go undetected.  S. Rep. No. 97-494, at  272-73 (1982), *reprinted at* 1982 U.S.S.C.A.N. 781, 1019.

After its audit of Mr. Craddock's 1985 tax return, the IRS followed Treas. Reg. § 1.6661-2 in computing a substantial understatement of tax penalty of $61,825.  Under Treas. Reg. § 1.6661-2(c)(1)-(2), an understatement of tax is the excess of the correct amount of tax required to be shown on the return, over the amount of tax shown on the return for the taxable year.  To reduce the

---

[12]  An understatement of tax is substantial if it exceeds the greater of either ten percent of the correct amount of the tax required to be shown on the return, or $5,000.  I.R.C. § 6661(b)(1).

understatement for adequately disclosed items, the regulation provides the amount of tax shown on the return is determined by computing the tax as if the items adequately disclosed had been properly reported. Treas. Reg. § 1.6661-1(d)(2). Therefore, the IRS computed the amount of tax shown on Mr. Craddock's tax return for purposes of the penalty by adding to the amount of alternative minimum tax (AMT) income actually shown on Mr. Craddock's tax return (-$5,973,827), the post-audit AMT income adjustments of $7,209,720 less the AMT adjustment of $3,378,385 for the adequately disclosed Airport Raintree transaction. This resulted in -$2,142,492 of AMT income and $0 tax for the amount shown on his return. Consequently, the IRS deducted $0 (the amount of tax shown on the return) from $247,299, the correct amount of tax after the IRS audit, to arrive at a understatement of tax of $247,299 and a penalty of $61,825 (25% of $247,299).

The bankruptcy and district courts rejected the IRS's computation, agreeing with Mr. Craddock that all of the understatement of tax, $247,299, relates to the adequately disclosed Airport Raintree transaction, and therefore no penalty was due. Under the courts' approach, the penalty is computed by taking the corrected amount of AMT income after all audit adjustments, $1,235,893 and reversing out the AMT income adjustment relating to the adequately disclosed Airport Raintree transaction, $3,378,385 arriving at

-$2,142,492 AMT income, or $0 tax. From this calculation, the courts reasoned that without the AMT income adjustment from the Airport Raintree transaction, no underpayment would exist. Consequently, they concluded Mr. Craddock was not liable for any substantial understatement penalty since all of the underpayment was attributable to an adequately disclosed item. We now must decide which interpretation of I.R.C. § 6661 is proper.

We recognize the statute, I.R.C. § 6661((b)(2)(B)(ii), is ambiguous as to how a taxpayer computes the "portion of the understatement attributable to" disclosed items. Pursuant to I.R.C. § 7805(a), Congress delegated authority to the Secretary of the Treasury to "prescribe all needful rules and regulations for the enforcement of [the Internal Revenue Code]." Under this authority, the Secretary of the Treasury adopted Treas. Reg. § 1.6661-2 to implement I.R.C. § 6661. We are therefore constrained under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984), to defer to the regulation if it is not arbitrary, capricious, or manifestly contrary to the statute. A court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

We conclude Treas. Reg. § 1.6661-2(d) is a reasonable construction of

I.R.C. § 6661. The regulation implements the statute by effectively reducing the understatement for items properly disclosed in a taxpayer's tax return. Treas. Reg. § 1.6661-2(d). Under the regulation, a taxpayer typically benefits in disclosing the tax treatment of an otherwise questionable item by calculating his tax shown on his return as if he had properly reported the item for tax purposes. *Id*.

Mr. Craddock claims the regulation applied to his case thwarts the statute's purpose of promoting disclosure since he disclosed the Airport Raintree transaction but is still subject to an understatement penalty. Although Mr. Craddock adequately disclosed the Airport Raintree transaction income of $3,378,385, he still allegedly failed to disclose another $3,831,335, which is subject to the understatement penalty.[13] It is this additional amount of income

---

[13] Under I.R.C. § 6661(b)(2)(B), the understatement is reduced for the portion of understatement attributable to the tax treatment of an item for which the taxpayer has or had substantial authority, in addition to items for which the relevant facts were adequately disclosed in the taxpayer's return. Mr. Craddock now claims the IRS has only assumed the remaining audit adjustments of $3,831,335 were undisclosed or not supported by substantial authority. If Mr. Craddock is correct that the items comprising the $3,831,335 were adequately disclosed, then these items would be added to his revised reportable income resulting in no understatement of tax. However, we are unable to determine from the record whether these items were adequately disclosed or where Mr. Craddock had substantial authority. In light of our remand of this calculation to the bankruptcy court, we defer to the bankruptcy court to make these findings.

which Mr. Craddock failed to disclose combined with awkwardness of beginning with negative taxable income that results in an understatement penalty.[14]  We agree with Mr. Craddock that the statute aims to promote the disclosure of questionable reporting positions.  However, we reject Mr. Craddock's, the bankruptcy and district courts' view that by disclosing some amount, yet not disclosing another significant amount of income, a taxpayer can avoid a substantial understatement of tax penalty altogether.  This interpretation would go directly against the purpose of promoting disclosures of all questionable reporting positions.  We note that had Mr. Craddock properly reported the income from the Airport Raintree transaction in his tax return, and treated the undisclosed items as he did, he still would have been liable for the same understatement penalty,

---

[14]  The regulation provides different results depending on whether the taxpayer's reported taxable income is a positive or negative amount.  For example, assume a taxpayer reports $500,000 of taxable income when his correct taxable income is $1,000,000.  He disclosed but did not report $250,000 of income.  Assume a twenty percent tax rate.  Without the disclosure of the $250,000, the taxpayer's understatement of tax is $100,000 ($200,000 correct tax less $100,000 of tax "reported").  With the disclosure, the understatement of tax is $50,000 ($200,000 correct tax less $150,000 of tax "reported").  Therefore, the taxpayer receives a direct benefit from disclosing.

In contrast, assume the same facts above, except the taxpayer reports -$500,000 of taxable income.  Without disclosure, the taxpayer's understatement of tax is $200,000 ($200,000 correct tax less $0 tax "reported").  With disclosure of the $250,000, the taxpayer's understatement of tax is still $200,000 ($200,000 correct tax less $0 tax "reported").

-23-

$61,825 under the statute.[15]  Therefore, why should he receive a greater benefit for disclosing an item than he would receive if he had actually reported the item as required by the tax law?  This situation would create an anomaly.  Assuming Mr. Craddock had disclosed but not reported all transactions resulting in the audit adjustments, his penalty would be zero.[16]  The result is exactly what the statute aims to promote, the disclosure of questionable tax positions.  Consequently, we rule Treas. Reg. §1.6661-2(d) is a permissible construction of I.R.C. § 6661, and therefore are obligated to defer to the proper calculation made under the regulation.

Accordingly, we **REVERSE** the district court's decision that Mr. Craddock established reasonable cause, and therefore reinstate the IRS late filing penalties for years 1981, 1982, and 1985.  We **REVERSE** the district and bankruptcy

---

[15]  Mr. Craddock's correct tax would be the same, $247,299.  His revised tax shown on his return would be $0 (AMT on -$5,973,827 reported income, plus $3,378,385 income on Airport Raintree transaction).  Therefore, the understatement of tax penalty would be 25% of $247,299 ($247,299 correct tax less $0 tax shown on return), or $61,825.

[16]  Mr. Craddock's correct tax would be the same, $247,299.  However, his revised tax shown on his return would also be $247,299 (AMT on -$5,973,827 reported income plus $3,378,385 income on the Airport Raintree transaction adequately disclosed plus $3,831,335 of income of all other audit adjustments), resulting in no penalty (25% of $0 ($247,299 correct tax minus $247,299 tax shown on return).)

court's calculation of the substantial understatement of tax penalty for 1985 and **REMAND** to the bankruptcy court to calculate the proper penalty in accordance with Treas. Reg. § 1.6661-2(d). We **REMAND** the IRS's motion for leave to correct a mistake in the bankruptcy court's judgment to the bankruptcy court to determine whether its 1994 judgment contains a clerical error or mistake for interest.