**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RICHARD I. PRESLEY; MARTINE N.
PRESLEY,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 18-9008
(CIR No. 19520-16)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Richard and Martine Presley ("Presleys") appeal the decision of the United

States Tax Court sustaining the Commissioner of Internal Revenue's Notice of

Deficiency for tax years 2010 and 2012, including penalties, related to charitable

deductions the Presleys claimed. Exercising jurisdiction under 26 U.S.C.

§ 7482(a)(1), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Prior to 1997, the Presleys hosted Bible studies at their residence in Tulsa, Oklahoma. In 1997, they formed Presley Family Ministries, Inc. ("PFM") as a nonprofit corporation under Oklahoma law. The Presleys' residence was named as PFM's location and principal office. Dr. Presley, who is an optometrist and operated several vision-care businesses, was named its principal agent. The Presleys have always served as PFM's corporate officers and on its four-member board of directors.

PFM's primary purposes include promoting Christianity and providing optometry services to people in low-income areas of other countries through annual mission trips. Dr. Presley served as PFM's lead pastor and spiritual leader. After forming PFM, the Presleys continued to use their residence for meetings, Bible studies, and other activities in pursuit of PFM's charitable purpose. They funded all of PFM's activities and never received a salary, housing allowance, or other benefit from PFM. Since at least 2004, the IRS has recognized PFM as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code ("I.R.C." or "Code"), 26 U.S.C. § 501(c)(3).

In 2008, Dr. Presley organized PFM Farms, LLC, and he owned 100% of it. Although PFM Farms was a for-profit entity, its purpose was to develop a blueberry farm and donate to PFM all profits from the sale of fruit to support PFM's charitable work. PFM Farms was set up as a pass-through entity, meaning income and loss would be reported on the Presleys' individual tax return (they were married and filed jointly for the years in question).

2

In 2008, PFM and PFM Farms entered into a 10-year crop and farming lease under which PFM Farms leased two acres from PFM to establish the blueberry farm. In 2008 and 2009, PFM Farms paid $119,182.36 for construction and reconfiguration of existing water ponds on PFM's property but outside of the acreage covered by the lease (the "land-improvement expenses"). In 2010, PFM Farms donated to PFM a Toro tractor-mower and the land-improvement expenses. At a board meeting in October 2010, PFM's board of directors approved receipt of those donations.[1]

The Presley's 2010 individual income tax return was prepared by Robert Johnson, a certified public accountant ("CPA"). Mr. Johnson was an employee of the Presleys and had unfettered access to, and familiarity with, all of the financial affairs and records of the Presleys and their entities. On the 2010 return, the Presleys included a charitable deduction of $107,364.00 for the land-improvement expenses PFM Farms had donated to PFM.[2] They also included a $3,000 charitable deduction for the Toro mower. The Presleys did not separately list or disclose any information about these deductions on their return; the amounts were simply incorporated into larger claimed deductions on Schedule A, as they stipulated at trial.

According to the minutes of a PFM board meeting held on April 20, 2012, PFM accepted the Presleys' donation of their residence, and a deed of transfer in fee

---

[1] The Tax Court expressed doubt that any PFM board meetings ever took place.

[2] That figure represented a discount on the $119,182.36 PFM Farms had actually paid.

3

simple was recorded in the county clerk's office in July 2012. Minutes from a May 25, 2012 PFM board meeting indicate that PFM's board of trustees approved the Presleys' request to use the residence as a parsonage, rent-free, after the transfer. Consistent with that indication, the Presleys continued to live in the residence rent-free (but paying the utility bills) through at least the time of trial in this case.

The Presley's 2012 tax return was prepared by Kathy Burch, who is both an attorney and a CPA. The return was timely filed on October 15, 2013, after an extension. On that return, the Presleys claimed a charitable deduction of $235,422 for the donation of their residence to PFM. The Presleys included only the second page of the form used to report Noncash Charitable Deductions, Form 8283, where they listed the value of the deduction, but the form's "Declaration of Appraiser" section was left entirely blank and unsigned, and the "Donee Acknowledgment" portion of the form identified PFM as the donee but was unsigned. *See* Aplt. App., Vol. 3 at 3223. In an appraisal report signed and dated December 5, 2013, a certified appraiser, Ronald Scott, concluded the fair market value of the residence as of May 10, 2012, was $236,000.[3]

In 2016, after an audit, the Commissioner issued the Presleys a Notice of Deficiency for the 2010 and 2012 tax years. *See id.*, Vol. 4 at 329-52. As relevant to

---

[3] At some point, the Presleys' bookkeeper, Wes Douglas, prepared a letter from PFM to the Presleys acknowledging the donation of their residence. The letter was dated October 12, 2012 but reported the appraised value of the house as $236,000, *see* Aplt. App., Vol. 7 at 650, which was the same as the value reported in Mr. Scott's December 5, 2013 appraisal.

this case, the Commissioner disallowed their charitable contributions of $107,346 for the land-improvement expenses, $3,000 for the Toro mower, and $235,422 for their residence.[4] The Commissioner also imposed accuracy-related penalties for both years ($7,853.80 for 2010, and $10,889.00 for 2012) based on I.R.C. § 6662.

The Presleys filed a petition for redetermination of the deficiencies in the United States Tax Court. After a trial, the court upheld the notice and the assessed penalties. The Presleys appeal.

## II.  Standard of Review

"We review the tax court's factual findings for clear error and its rulings of law *de novo*." *Martin v. Comm'r*, 436 F.3d 1216, 1220 (10th Cir. 2006).

## III.  Discussion

### A.  Land-improvement-expense deduction

Section 170 of the Code allows for a deduction for charitable contributions, as defined in that section, provided the taxpayer satisfies the relevant statutory and regulatory requirements. *See* I.R.C. § 170(a). The Tax Court provided three independent reasons for sustaining the Commissioner's disallowance of the Presleys' land-improvement-expense deduction.[5] The first was that PFM Farms did not incur

---

[4] At trial, the Presleys conceded other deficiencies asserted in the notice.

[5] As the Tax Court noted, the evidence was inconsistent regarding whether PFM Farms had donated to PFM the land-improvement expenses, the ponds, or PFM Farms, LLC itself. Although the Tax Court determined the Presleys had not established they had donated the ponds, that determination is not at issue in this appeal.

the expenses during 2010, the tax year for which the Presleys claimed the deduction. *See* Aplt. App., Vol. 2 at 182-83 & n.54. In reaching that conclusion, the court relied on I.R.C. § 170(a)(1), which in relevant part provides "[t]here shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) *payment of which is made within the taxable year*[,]" (emphasis added). The court also relied on Treas. Reg. § 1.170A-1(a), which provides that "[a]ny charitable contribution, as defined in section 170(c), *actually paid during the taxable year* is allowable as a deduction in computing taxable income *irrespective of* the method of accounting employed or of *the date on which the contribution is pledged*" (emphasis added).[6]

The Presleys have not challenged this conclusion.[7] We therefore affirm the Tax Court's ruling on the land-improvement-expense deduction without considering the Presleys' challenges to the Tax Court's other two independent, alternative grounds for its ruling on that deduction. *See Shook v. Bd. of Cty. Comm'rs*, 543 F.3d 597, 613 n.7 (10th Cir. 2008) (discussing this court's precedent "that where

---

[6] The Tax Court found that the CPA who prepared the Presleys' 2010 return, Mr. Johnson, advised the Presleys to include the land-improvement expenses as a charitable deduction on their 2010 return because of errors (by another accountant) in the preparation of their 2008 and 2009 returns, where the expenses should have been deducted. Aplt. App., Vol. 2 at 164, 178.

[7] In their reply brief, the Presleys state they had "fully briefed their position on why the unreimbursed land improvement expenses . . . were properly deducted during the 2010 tax year," and they direct our attention to "Sections (B)(1) and (2) and (C) of their Opening Brief." Aplt. Reply Br. at 25. However, we fail to see any argument in those sections of their opening brief, or anywhere else in that brief, addressing the Tax Court's first ground for sustaining the disallowance of the land-improvement-expense deduction.

6

a district court's disposition rests on alternative and adequate grounds, a party who, in challenging that disposition, only argues that one alternative is erroneous necessarily loses because the second alternative stands as an independent and adequate basis, regardless of the correctness of the first alternative").[8]

B.     **Toro-mower deduction**

A charitable deduction of property "for which a deduction of more than $500 is claimed" is not allowed unless the taxpayer meets certain requirements.  I.R.C. § 170(f)(11)(A)(i).  For the Presleys' claimed deduction of $3,000 for the Toro mower to be allowable, they were required to, among other things, "include[] with the return for the taxable year in which the contribution is made a description of such property," I.R.C. § 170(f)(11)(B).[9]

On Schedule A of their 2010 return, the Presleys listed $4,145 as a gift to charity "[o]ther than by cash or check."  Aplt. App., Vol. 3 at 251.  On their attached

---

[8] The Tax Court's other grounds for sustaining the disallowance of the land-improvement-expense deduction were (1) the expenses were not "unreimbursed expenditures made incident to the rendition of services" to a charitable organization, Treas. Reg. § 1.170A-1(g), as is required to avoid the general rule that no charitable "deduction is allowable under [I.R.C. §] 170 for a contribution of services," Treas. Reg. § 1.170A-1(g); and (2) the Presleys failed to substantiate the contribution with "a contemporaneous written acknowledgment of the contribution by the donee organization," I.R.C. § 170(f)(8), as required for donations of $250 or more by I.R.C. § 170(f)(8) and Treas. Reg. § 1.170A-13(f).

[9] Treas. Reg. § 1.170A-13(b) sets forth additional informational requirements. The Presleys conceded they did not comply with any of those requirements either, but as we discuss, in disallowing the Toro-mower deduction, the Tax Court relied only on their failure to comply with I.R.C. § 170(f)(11)(B)'s description requirement.

7

Form 8283, which Dr. Presley signed, the Presleys listed multiple items they had donated to thrift stores but made no mention of the Toro mower. *See id.* at 268-70.

In the Tax Court, the Presleys conceded they did not include the required description of the mower on Form 8283, but they argued they were nonetheless entitled to the deduction under an exception where the failure to include the required description "is due to reasonable cause and not to willful neglect," I.R.C. § 170(f)(11)(A)(ii)(II). They claimed they reasonably relied on their CPA, Mr. Johnson, to prepare Form 8283, and that although he had access to the required information, he simply failed to include it on the form.

The Tax Court rejected this argument because it found the Presleys had not relied in good faith on Mr. Johnson's preparation of Form 8283. As the court observed, § 170(f)(11)(A)(ii)(II)'s term "reasonable cause" is not defined by statute or regulation, but the same term in other tax settings has generally been construed to require a taxpayer to exercise ordinary business care and prudence. *See, e.g.*, *United States v. Boyle*, 469 U.S. 241, 246 (1985) (construing "reasonable cause" in late-filing penalty statute and related Treasury Regulation); *United States v. Craddock (In re Craddock)*, 149 F.3d 1249, 1255 (10th Cir. 1998) (same). To meet this standard when reliance on an adviser is at issue, a taxpayer must establish "(1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser,

and (3) the taxpayer actually relied in good faith on the adviser's judgment."

*Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 99 (2000).[10]

The Tax Court resolved this issue based on the third element, good-faith reliance. The court pointed out that at Dr. Presley's request, their attorney, David Dryer, had prepared the minutes of the 2010 PFM board meeting where the board voted to approve receipt of the Toro mower. Mr. Dryer specifically added to those minutes the following advice regarding the Toro mower donation:

> The [PFM] Board has directed the donor[11] to obtain his own appraisal for purposes of valuation. . . . The Board further directs its corporate officers to execute the appropriate section of IRS Form 8283 when the same is presented by the donor.

Aplt. App., Vol. 7 at 594.[12] The Tax Court found that at trial, Mr. Dryer testified he provided that advice to remind the Presleys of the need to include a properly executed Form 8283 with their 2010 return. The Tax Court determined that in light of this advice, a reasonable person reviewing the return Mr. Johnson had completed would have questioned why there was no reference to or information about a deduction for the Toro mower, either on Form 8283 or anywhere else on the 2010

---

[10] Although decisions of the Tax Court are not binding on this Court, we consider the Tax Court decisions we cite to be persuasive and relevant authority.

[11] The minutes identified Dr. Presley as the donor.

[12] Mr. Dryer's advice also pertained to the land-improvement-expense deduction, which is relevant to our later discussion of the penalty associated with that deduction.

9

return, and therefore the Presleys' reliance on Mr. Johnson's completion of that form was not in good faith.

Whether a taxpayer has shown reasonable cause under § 170(f)(11)(A)(ii)(II) is a question of fact we review for clear error. *See Estate of True v. Comm'r*, 390 F.3d 1210, 1243-44 (10th Cir. 2004) (applying clear-error review to whether a taxpayer qualifies for the reasonable-cause exception to penalties under I.R.C. § 6664(c)).[13] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1305 (10th Cir. 2015) (internal quotation marks omitted).

We conclude the Tax Court did not clearly err in finding the Presleys did not in good faith rely on Mr. Johnson's completion of Form 8283. Mr. Dryer testified the Presleys sought his advice on donating the Toro mower. And Dr. Presley testified he "knew of . . . the lawn mower" deduction. Aplt. App., Vol. 9 at 822. Clearly then, the Presleys were cognizant of the mower deduction, and Mr. Dryer specifically made them aware that Form 8283 applied to it. Granted, Mr. Dryer did not expressly state in the PFM board-meeting minutes he drafted that the mower had to be described on Form 8283, and as the Presleys note, they did not hire Mr. Dryer

---

[13] The parties have not cited to, nor have we found, any caselaw setting forth the standard of review applicable to a Tax Court ruling on whether a taxpayer showed "reasonable cause" under § 170(f)(11)(A)(ii)(II). As with other aspects of the "reasonable cause" analysis, we therefore take guidance from rulings involving a showing of "reasonable cause" under other Code provisions.

to complete their 2010 return. But in light of Mr. Dryer's identification of the need for an appraisal of the mower's value and for a PFM corporate officer to complete the donee portion of Form 8283 when the donor presented it, the lack of any mention of the mower on Form 8283 or elsewhere in their return should have caused the Presleys, in the exercise of "ordinary business care and prudence," *Boyle*, 469 U.S. at 246 (internal quotation marks omitted), to question Mr. Johnson about its absence before approving their return for filing with the IRS. Further, the Presleys' failure to inquire about the omission of the mower from Form 8283 is all the more surprising because the form listed a variety of thrift-shop donations with fair-market values of as little as $14, but not the $3,000 mower. The lack of any mention of a mower valued at $3,000 should have caused the Presleys to question Mr. Johnson before approving the return for filing.

C.     **Residence deduction**

When a taxpayer claims a deduction of property of more than $5,000, he or she must "obtain[] a qualified appraisal" of the property and "attach[] to the return for the taxable year in which such contribution is made such information regarding such property and such appraisal as the Secretary [of the Treasury] may require." I.R.C. § 170(f)(11)(C). What constitutes a "qualified appraisal" is defined by regulation. *See* I.R.C. § 170(f)(11)(E)(i)(I) (defining "qualified appraisal" as one that "is treated for purposes of this paragraph as a qualified appraisal under regulations or other guidance prescribed by the Secretary"). And in Treas. Reg. § 1.170A-13(c), the

11

Secretary has set out a number of requirements for both a "qualified appraisal" and the appraisal information that must be included with a tax return.

The Tax Court sustained the disallowance of the Presleys' claimed deduction on their 2012 return of $235,422 for the donation of their residence to PFM because (1) they did not obtain a "qualified appraisal" and (2) the Form 8283 attached to their 2012 return did not contain "a fully completed appraisal summary," Treas. Reg. § 1.170A-13(c)(2)(i)(B).[14]  More specifically, the Tax Court found the Presleys failed to comply with the following regulatory requirements:

- § 1.170A-13(c)(3)(i)(A):  defining "qualified appraisal" in relevant part as an "appraisal document . . . [r]elate[d] to an appraisal that is made not . . . later than the date specified in paragraph (c)(3)(iv)(B) of this section," which in this case, as discussed below, was October 15, 2013. The Tax Court found Mr. Scott's appraisal was made on December 5, 2013.

- § 1.170A-13(c)(3)(ii)(C):  requiring a "qualified appraisal" to include "the date . . . of the contribution to the donee."  Mr. Scott's appraisal included no such date.

- § 1.170A-13(c)(3)(ii)(D):  requiring a "qualified appraisal" to include "[t]he terms of any agreement or understanding entered into (or expected to be entered into) by or on behalf of the donor or donee that relates to the use . . . of the property contributed."  Mr. Scott's appraisal included no such terms.

- § 1.170A-13(c)(3)(ii)(G):  requiring a "qualified appraisal" to include "[a] statement that the appraisal was prepared for income tax purposes." Mr. Scott's appraisal included no such statement; as the Tax Court noted, his appraisal specifically stated its "intended use" was "for a mortgage finance transaction," Aplt. App., Vol. 7 at 633.

---

[14] "The IRS has prescribed Form 8283 to be used as the appraisal summary." *Costello v. Comm'r*, 109 T.C.M. (CCH) 1441, at *15 (2015) (internal quotation marks omitted).

12

- § 1.170A-13(c)(3)(iv)(B): requiring the "qualified appraisal" be "received by the donor before the due date (including extensions) of the return on which a deduction is first claimed." The Tax Court found the Presleys did not receive the appraisal, which was made and dated December 5, 2013, before the October 15, 2013 due date for their 2012 return.

- 1.170A-13(c)(2)(i)(B): requiring the taxpayer to "[a]ttach a fully completed appraisal summary (as defined in paragraph (c)(4) of this section) to the tax return . . . on which the deduction for the contribution is first claimed . . . by the donor." The Tax Court found the Presleys' appraisal summary was incomplete because the section of Form 8283 for the appraiser's declaration, including his signature, was entirely blank, and no representative of PFM signed the "Donee Acknowledgment" section of that form.

The Presleys do not dispute the Tax Court's findings that Mr. Scott's appraisal and the appraisal summary on Form 8283 were deficient in these respects. They instead argue they substantially complied with the qualified-appraisal and appraisal-summary requirements or, alternatively, their failure to substantially comply with those requirements was excusable because it was due to "reasonable cause and not to willful neglect," I.R.C. § 170(f)(11)(A)(ii)(II). The Commissioner primarily argues (1) the doctrine of substantial compliance is no longer viable,[15] but if it is, the Presleys failed to substantially comply with the substantiation

_____

[15] The Commissioner's argument in this respect is based on the 2004 effective date of I.R.C. § 170(f)(11), which post-dated the promulgation of Treas. Reg. § 1.170A-13 and mandates that "no deduction shall be allowed under [§ 170(a)] for any contribution of property for which a deduction of more that $500 is claimed unless [the taxpayer] meets the [substantiation requirements] with respect to such contribution," § 170(f)(11)(A)(i). The statute also provides two limited exceptions, one for "[r]eadily valued property," § 170(f)(11)(A)(ii)(I), and one where the failure to comply is "due to reasonable cause and not to willful neglect," § 170(f)(11)(A)(ii)(II).

requirements; and (2) the Presleys' failures are not excusable for reasonable cause. We conclude that the Presleys did not substantially comply with the appraisal requirements and that their failure to do so is not excusable under the "reasonable cause" exception. Accordingly, we may assume, without deciding, that the doctrine of substantial compliance remains viable, and we do not address alternative arguments for affirmance the Commissioner advances that the Tax Court did not reach.[16]

1. **No substantial compliance**

The Presleys argue they substantially complied with the regulatory substantiation requirements because they obtained an appraisal and the appraisal summary on Form 8283 provided the date of contribution, the date they purchased the residence, the cost basis of the residence, the description and condition of the residence, and the identity of the donee, as required by Treas. Reg. § 1.170A-13(c)(4)(ii). They claim the only defects on Form 8283 are that the donee acknowledgment is not signed and the appraiser's declaration does not identify the appraiser. The Form 8283 defects, they argue, do not go to the essence of the issue, which they claim is whether they donated their residence to PFM during the 2012 tax year. Nor, they claim, do the defects thwart the purpose of the substantiation

---

[16] Those alternative grounds for affirmance are (1) the Presleys retained dominion and control over the residence after the contribution; (2) they expected to and in fact received a substantial benefit in return for the contribution; and (3) they failed to obtain from PFM a contemporaneous written acknowledgment of the contribution.

requirements—to "alert the Commissioner to potential overvaluations of contributed property and thus deter taxpayers from claiming excessive deductions," *RERI Holdings I, LLC v. Comm'r*, 149 T.C. 1, 14 (2017).

In support of their argument, they lean heavily on *Bond v. Commissioner*, 100 T.C. 32 (1993). The Commissioner argues that *Bond* is distinguishable, and we agree. In *Bond*, the Tax Court expressed the view that the reporting requirements of Treas. Reg. § 1.170A-13 "do not relate to the substance or essence of whether or not a charitable contribution was actually made," and therefore concluded "that the reporting requirements are directory and not mandatory." *Bond*, 100 T.C. at 41. However, the only substantiation requirement the *Bond* taxpayers failed to comply with was to provide the appraiser's qualifications. *Id.* at 41-42. When asked for those qualifications, the taxpayers promptly furnished them. *Id.* at 42.

In concluding the taxpayers in *Bond* had substantially complied with the substantiation requirements, the Tax Court stated that the case was not one where the taxpayers had "failed to obtain *a timely appraisal* of the donated property and thereby failed to establish its value for claiming a contribution deduction on their return." *Id.* at 42 (emphasis added). That observation suggests that a timely appraisal, as defined by the regulation, is necessary for substantial compliance with the substantiation requirements. And in fact the Tax Court has since stated that "nothing in *Bond* . . . relieves [a taxpayer] of the requirement of obtaining a qualified appraisal," *Hewitt v. Comm'r*, 109 T.C. 258, 264 (1997), and that "late appraisals do

15

not substantially comply with the regulations," *Mohamed v. Comm'r*, 103 T.C.M. (CCH) 1814, at *9 (2012).

In the Presleys' case, the Tax Court observed that the Presleys failed not only to have Mr. Scott fill out and sign the appraiser's section of Form 8283, as required by Treas. Reg. § 1.170A-13(c)(4)(i)(C), but also to "obtain" or "receive . . . a qualified appraisal" within the time limits prescribed by Treas. Reg. § 1.170A-13(c)(3)(i)(A) and (iv)(B).  Aplt. App., Vol. 2 at 213.  As relevant here, the appraisal had to be "*made* not . . . later than the date specified in paragraph (c)(3)(iv)(B) of this section."  Treas. Reg. § 1.170A-13(c)(3)(i)(A) (emphasis added). In the Presleys' case, that date was October 15, 2013, the date their 2012 return was due, including extensions.  *See id.* § 1.170A-13(c)(3)(iv)(B) ("The qualified appraisal must be received by the donor before the due date (including extensions) of the return on which a deduction is first claimed . . . under section 170 with respect to the donated property.").  The Tax Court found Mr. Scott made his appraisal on the date he signed it—December 5, 2013.

The Presleys present two challenges to the finding that Mr. Scott's appraisal was not made until December 5, 2013.  First, they state that Mr. Scott visited their property to do the appraisal on May 10, 2012, which was the effective date Mr. Scott put in his appraisal.  But that statement is conclusory and therefore does not persuade us that the Tax Court clearly erred in finding the appraisal was not "made" until after the Presleys' 2012 return was due.  *See United States v. Patterson*, 713 F.3d 1237,

16

1245 (10th Cir. 2013) (rejecting conclusory contentions as unpersuasive on review for clear error).

The Presleys' second challenge to the Tax Court's finding on the timing of the appraisal is that Ms. Burch, the attorney and CPA who prepared their 2012 return, testified she "had spoken to Mr. Scott and relied upon his appraisal report in valuing the Residence." Aplt. Reply Br. at 7-8. But Ms. Burch went further than that, testifying she had a copy of the appraisal report before she filed the return on October 15, 2013. When confronted with the fact that the date Mr. Scott signed the report post-dated her preparation of the 2012 return, she responded, "I did have it, so I don't know why he signed - - I don't know why it has that date on it." Aplt. App., Vol. 11 at 991. The Tax Court "did not find credible Ms. Burch's testimony that [the Presleys] gave her an appraisal of [their] residence before she prepared [their] 2012 return." *Id.*, Vol. 2 at 207 n.71. That finding was based on the court's "observation of [Ms. Burch's] demeanor." *Id.*, Vol. 11 at 1016. The Presleys have not addressed that finding, and we afford great deference to findings of fact "based on determinations regarding the credibility of witnesses," *Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996) (internal quotation marks omitted). The Tax Court also noted that Dr. Presley testified he could "not remember when Mr. Scott's December 5, 2013 appraisal report was made." Aplt. App., Vol. 2 at 207 n.71. And we note the Presleys did not call Mr. Scott to testify.

In sum, the Presleys have failed to show the Tax Court clearly erred in finding the appraisal was not made before their 2012 return was due, as required by Treas.

17

Reg. § 1.170A-13(c)(3)(i)(A) and (iv)(B). That failure is fatal to their substantial-compliance argument, *see Mohamed*, 103 T.C.M. (CCH) 1814, at *9; *Bond*, 100 T.C. at 42, regardless of whether the appraisal summary substantially complied with Treas. Reg. § 1.170A-13(c)(2)(i)(B).

2. **No reasonable cause**

The Presleys next argue that even if they did not strictly or substantially comply with the requirements to obtain a qualified appraisal and attach a fully completed appraisal summary to their tax return, the residence deduction should not be disallowed because their failure to meet those requirements was due to "reasonable cause and not to willful neglect," I.R.C. § 170(f)(11)(A)(ii)(II). We disagree. As discussed above, "reasonable cause" requires a taxpayer to exercise ordinary business care and prudence. *Boyle*, 469 U.S. at 246; *In re Craddock*, 149 F.3d at 1255. And when reliance on an adviser is at issue, a taxpayer must establish, among other things, that he "provided necessary and accurate information to the adviser" and "actually relied in good faith on the adviser's judgment." *Neonatology Assocs.*, 115 T.C. at 99.

The Tax Court found the Presleys did not obtain an appraisal until after they signed their 2012 return and Ms. Burch filed it, they signed it even though the donor-statement on Form 8283 was unsigned and the appraiser-declaration section was blank, and they did not ask Ms. Burch about those deficiencies. That conduct, the court found, amounted to a disregard of Mr. Dryer's advice—which he provided orally on several occasions and in the minutes of a PFM board meeting he prepared

18

where the board voted to accept the donation of the residence—that in order to claim their donation of the residence as a charitable deduction, they needed to obtain an appraisal and submit a properly-completed Form 8283. The Tax Court found those failings did not reflect the exercise of ordinary business care and prudence or represent what a reasonable person would do under the circumstances, and therefore the Presleys had not established that they relied in good faith upon Ms. Burch's completion of their 2012 return when they signed it.

The record supports these findings, and the Presleys' arguments fail to persuade us that the Tax Court clearly erred in making them. The Presleys maintain they reasonably relied on Ms. Burch's preparation of their 2012 return because they had no reason to doubt her representation that the return was complete and the residence deduction was properly taken. They also point to Ms. Burch's testimony that it was her own oversight that the appraiser-declaration and donor-statement sections of Form 8283 were deficient, and that she failed to advise the Presleys that those sections needed to be completed. And they claim the only deficiency with respect to the appraisal itself is that Mr. Scott did not complete and prepare the report in a timely manner. But as the Commissioner points out, in light of Mr. Dryer's advice and the fact the appraisal had not been made by the time the 2012 return was filed, the Presleys could not have reasonably expected Ms. Burch to properly complete Form 8283, and a reasonable person reviewing the return before signing it would have questioned the deficiencies on that form. We therefore see no clear error in the Tax Court's finding that the Presleys failed to establish reasonable cause for

19

their failure to comply with the substantiation requirements for the residence deduction.

## D. Penalties

In relevant part, the Code imposes a mandatory, 20-percent, accuracy-related penalty on the portion of any underpayment of tax attributable to "[a]ny substantial understatement of income tax." I.R.C. § 6662(a), (b)(2). An understatement of tax is substantial under I.R.C. § 6662(b)(2) if "the amount of the understatement for the taxable year exceeds the greater of . . . 10 percent of the tax required to be shown on the return for the taxable year" or "$5,000." I.R.C. § 6662(d)(1)(A).

No penalty, however, is imposed on any such portion of a § 6662(b)(2) underpayment if the taxpayer shows "there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." *Id.* § 6664(c)(1). The determination of "reasonable cause" and "good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664–4(b)(1). "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.*; *see also Boyle*, 469 U.S. at 246 (explaining that "reasonable cause" requires a taxpayer to exercise "ordinary business care and prudence" (internal quotation marks omitted)); *In re Craddock*, 149 F.3d at 1255 (same). Again (and as discussed above), where reasonable cause is based on a taxpayer's reliance on an adviser, the taxpayer must establish, among other things,

that he "provided necessary and accurate information to the adviser" and "actually relied in good faith on the adviser's judgment." *Neonatology Assocs.*, 115 T.C. at 99.

The Tax Court sustained the 20-percent penalty the Commissioner imposed pursuant to § 6662(b)(2) on the substantial understatement of tax attributable to the three charitable deductions at issue in this appeal, finding the Presleys failed to establish reasonable cause and good faith under § 6664(c)(1). The Presleys challenge that finding. Our review is for clear error. *Estate of True*, 390 F.3d at 1244.

### 1. **Land-improvement-expense deduction**

We applied waiver in affirming the Tax Court's disallowance of the land-improvement-expense deduction on the ground that the Presleys were not entitled to take that deduction for the 2010 tax year because the expenses were incurred in 2008 and 2009. But the Tax Court's penalty discussion omitted any analysis of whether reasonable cause could excuse the penalty based on the Presleys reliance on professional advice that the deduction could be taken in 2010. Instead, the Tax Court's penalty analysis focused on the Presleys' reliance on Mr. Johnson's completion of Form 8283. Rather than resolve the factual issue of whether the Presleys reasonably relied on the advice of Mr. Johnson (and perhaps Mr. Dryer) that they could take the deduction on their 2010 return, we will assume they did and resolve this issue based on the Tax Court's reasons for sustaining the penalty related to this deduction.

The Tax Court found the Presleys had not relied in good faith on the advice of Mr. Johnson or Mr. Dryer with respect to the land-improvement-expense deduction.

21

The court reasoned that Dr. Presley provided inaccurate information to Mr. Johnson and Mr. Dryer when he told them "that in 2010 he donated to PFM his wholly owned limited liability company, PFM Farms." Aplt. App., Vol. 2 at 225; *see also id.*, Vol. 10 at 899 (Dr. Presley's testimony that he told Mr. Johnson and Mr. Dryer he had "donated the farm, . . . PFM Farms, LLC"). The court further found that Dr. Presley should have inquired of Mr. Johnson why there was no reference to the donation of PFM Farms on Form 8283 given that, in the PFM board-meeting minutes Mr. Dryer prepared at Dr. Presley's request, Mr. Dryer advised Dr. Presley of the need to obtain an appraisal of the donation of the "land and soil preparation" and to include a properly completed Form 8283 with the Presleys' return, *id.*, Vol. 7 at 594. *See id.*, Vol. 2 at 226. The court found Dr. Presley's actions fell short of what a reasonable person would do under the circumstances and therefore his reliance on Mr. Johnson's preparation of the 2010 return as it related to the deduction of the land-improvement expenses was not in good faith. *Id.*

We see no clear error. The Presleys argue that even if Dr. Presley had misinformed Mr. Johnson that the donation consisted of the LLC, Mr. Johnson was fully aware that PFM Farms had instead donated the land-improvement expenses, and the Presleys, who lack accounting or tax experience, reasonably relied on his representation that they had complied with all the necessary requirements. What Mr. Johnson was aware of, however, makes no difference in assessing whether Dr. Presley reasonably and in good faith relied on Mr. Johnson's completion of the 2010 return. Regardless of Mr. Johnson's awareness of the nature of the donation

22

and any confusion Dr. Presley may have had about it, Dr. Presley still should have, in the exercise of reasonable care, asked Mr. Johnson why the deduction was not mentioned on Form 8283 given Mr. Dryer's advice about the need for an appraisal and proper documentation of that donation on the Presleys' tax return. Doing so would not have required any particular accounting or tax experience.

2. **Toro-mower deduction and residence deduction**

The Tax Court sustained the penalties regarding the $3,000 Toro-mower deduction and the residence deduction for the same reasons it had found the Presleys failed to establish reasonable cause and good-faith reliance on their advisors for taking those deductions. We have already upheld that reasoning with regard to the underlying deductions and therefore uphold, without further discussion, the related penalties.

## IV. **Conclusion**

The decision of the United States Tax Court is affirmed.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

23